IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| Vance Shaf, | ) | Bankruptcy No. 10 B 51226 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| Dr. Duncan Dinkha, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary No. 11 A 00664 |
| | ) | |
| Vance Shaf and V.E.K. Homes, LLC, | ) | |
| | ) | |
| Defendants. | ) | Judge Jacqueline P. Cox |

**MEMORANDUM OPINION ON TRIAL OF ADVERSARY PROCEEDING**

This matter is before the Court after a trial of the adversary complaint filed by Plaintiff Dr. Duncan Dinkha ("Plaintiff") objecting to the discharge of a debt owed by Defendant Van Shaf ("Shaf"). The Defendant filed for relief under Chapter 7 of the Bankruptcy Code ("Code") on November 16, 2010 in case no. 10 bk 51226. He did business under the corporate name V.E.K. Homes, LLC. ("V.E.K."), a co-debtor with Shaf regarding a debt owed to the Plaintiff.

The complaint seeks a finding that the debt reflected by a judgment in the amount of $75,000 is not dischargeable under 11 U.S.C. §523(a)(2)(A) of the Bankruptcy Code ("Code").

The Debtor has been a real estate developer for many years. He was involved in developing a subdivision in Morton Grove, Illinois ("Morton Grove") known as Vamsted. When Vamsted was developed Morton Grove required the dedication of three lots therein for water retention.

Morton Grove agreed to release the three lots once the neighboring property known as Delanie Farms was developed. Delanie Farms was developed and an alternative water retention project was developed thereon. According to Shaf, Morton Grove was to take title to the alternative water retention project on Delanie Farms and allow the development of the three Vamsted lots.

Morton Grove later refused to agree to be listed as the owner of the water retention project located on Delanie Farms. Shaf sued Morton Grove in 2009; *see* Case No. 09 CH 51316, Circuit Court of Cook County, Illinois, Chancery Division. On August 30, 2010 a Circuit Court of Cook County, Illinois judge ruled in favor of the Village of Morton Grove, denying Shaf's request for specific performance. The opinion therein noted that in a May 7, 2004 letter the Village informed Vamsted that it would prefer not to accept title and that it wished for the entire retention area to remain the property, as well as the maintenance responsibility of the homeowners' association. The court found that the village's ordinance did not contain an agreement that it could enforce as requested by Shaf.

Shaf sought purchasers to order custom homes on the three lots. Dr. Dinkha signed an agreement for the construction of a custom home on one of the lots in 2006; its price was $895,300.

Defendant Shaf received two earnest money deposits of $89,530.00 each from the Plaintiff toward the purchase of the custom home. The contract required an initial deposit of 10% and a second 10% deposit upon "permit."

The Defendant claims that the first payment of $89,530 was required by the parties' agreement, but that the Plaintiff volunteered to make the second $89,530 payment. The Court does not believe that the second payment of $89,530 was paid voluntarily by the Plaintiff. It was requested by the Defendant; he instructed the Plaintiff to give the monies to Realtor Kathy Puljic, his associate.

This is important because the Defendant wants the Court to believe that the Plaintiff knew about the zoning problems and the delay that they entailed. The Court instead believes the Plaintiff's testimony that he made the second earnest money payment because he was told by the Defendant and his associate that if he made a larger down payment he could obtain better financing terms.

The Defendant wants the Court to believe that the Plaintiff should not be allowed to claim that the Defendant fraudulently concealed the zoning problem involved with getting the Village of Morton Grove to finalize its efforts regarding the drainage/water retention project. The Court finds, however, that the Plaintiff has established by a preponderance of the evidence that Shaf had a duty to disclose to the Plaintiff the facts and circumstances surrounding the zoning problem since it impacted when he could expect delivery of the home. The Court finds that the Plaintiff made the second earnest money payment at a time when he should have been told about the issues certain to cause delay, the zoning problem. Shaf had a duty to inform the Plaintiff of the problem when the Plaintiff expressed his desire to occupy the home as soon as possible. The failure to inform, under the circumstances herein, amounts to fraud.

In *McClellan v. Cantrell,* 217 F.3d 890, 894 (7th Cir. 2000) the Seventh Circuit explained that:

> Fraud is a generic term, which embraces all the multifarious means which human ingenuity can devise and which are resorted to by one individual to gain an advantage over another by false suggestions or by the suppression of truth. No definite and invariable rule can be laid down as a general proposition defining fraud, and it includes all surprise, trick, cunning, dissembling, and any unfair way by which another is cheated.

*McClellan,* 217 F.3d at 894 (*quoting Stapleton v. Holt,* 250 P.2d 451, 453-54 (Okla.1952)).

The Plaintiff herein was cheated. He made it clear that he was in a hurry to occupy the custom home he contracted for while unbeknownst to him, the Defendant was engaged in a lengthy court fight with the Village of Morton Grove over the right to build on the land on which the home was to be built. The Defendant's silence on the issue at that time amounted to fraud. The Defendant testified that he waited for several years to gain the right to build on the land in question. As an experienced contractor he knew that he could not secure the right to build on it soon enough to satisfy the Plaintiff.

Plaintiff Dr. Duncan Dinkha sued Shaf when he became aware of the problem. The parties settled that action with an agreement that Dinkha would be paid $100,000. Some payments were made. A $75,000 judgment was entered against Shaf and V.E.K. when payments due under the settlement agreement were not made. Shaf argues that the judgment based on the settlement agreement is not dischargeable because the subsequent settlement agreement was not based upon fraud.

The Seventh Circuit held in *In re West,* 22 F.3d 775, 778 (7th Cir. 1994) that where the parties expressly agree that a later note substitutes for an old debt based on fraud, discharge of the later debt can be had unless the objecting creditor shows that the settlement/new debt was based on fraud. Shaf's general argument of waiver does not inform the Court whether the settlement agreement became a new debt capable of being discharged independent of the fraudulent nature of the underlying obligation it addressed. The Seventh Circuit found that the bankruptcy court and the district court correctly interpreted and applied its ruling in *Maryland Casualty Co. v. Cushing,* 171 F.2d 257, 258-59 (7th Cir. 1948) where it held that where a note expressly given and received as payment or waiver of an antecedent tort action on agreement should discharge the original obligation and substitute a new one, the original debt is fully satisfied by acceptance of the note.

The parties' Settlement Agreement is part of Group Exhibit A to the Answer to the adversary complaint. Adversary Complaint 11-00664, dkt. no. 7. At paragraph 5 it states that:

> subject to full payment by Shaf and V.E.K., the parties hereto in consideration of the covenants herein contained do hereby remise, release and forever discharge each other, their agents, servants, employees, officers, insurers, successors, heirs and assigns, and each and every one of them, of and from all claims and demands, which the parties now

have or may in the future have, arising or growing out of any event or occurrence having taken place prior to the date hereof, including, without limiting the generality of the foregoing, the matters asserted in the Dinkha Litigation. This Release shall inure to the benefit of and be binding upon the heirs, executors, administrators, successors and assigns of the parties.

The release was to be effective upon full payment of $75,000. That amount has not been paid. Shaf's waiver argument does not stand.

Count I of the complaint alleges that the Defendant violated 11 U.S.C. § 523(a)(2)(A) which excepts from discharge debts for "money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

To prevail under section 523(a)(2)(A) a plaintiff must show that

(1) the debtor made the representation;

(2) the time of the representation, the debtor knew it to be false;

(3) the debtor made the representation with the intent and purpose of deceiving the plaintiff;

(4) the plaintiff justifiably relied on the representation; and

(5) the plaintiff sustained a loss or damage as the proximate consequence of the representation having been made.

4 Collier On Bankruptcy ¶ 523.08[1][e] (16th ed. 2011).

Shaf told the debtor to make the second 10% down payment installment to obtain better financing terms, falsely, knowing that the second 10% payment was not due until a permit was obtained and that the zoning problems were likely to cause more delay than the Plaintiff anticipated, since the Plaintiff made it clear that he was in a hurry to occupy the premises contracted for. Shaf had a duty to disclose the circumstances of the delay caused by the zoning problems.

On numerous other occasions Shaf told the Plaintiff that the home would be available at points in time when he knew that such was not possible.

In terms of the time of the representation, Shaf knew that the longstanding zoning issue had not been resolved when he failed to inform the Plaintiff about it and instead told him to make the second $89,530 installment to secure better financing terms. Shaf had waited several years

for development to be pursued at Delanie Farms so that he could obtain the right to develop the lots in issue. He knew that he could not comply with the Plaintiff's request to occupy the premises as soon as possible.

The Court finds that the representation was made with the intent and purpose of deceiving the Plaintiff. The second installment was not yet due, as the permit had not yet been issued. Instead of producing the permit to get the second payment, Shaf misled the Plaintiff, intending to deceive the Plaintiff by suggesting other reasons for the Plaintiff to make the second 10% payment before it was due.

The Plaintiff justifiably relied on the representation. He reasonably assumed that the initial promise to deliver the home within a year or so was still valid. There is nothing in the record to suggest that the Plaintiff had notice of facts that suggested otherwise.

The Plaintiff lost the two $89,530 payments, for a total of $179,060 as a consequence of the representation made by Shaf.

The Plaintiff prevails on Count. I. He has proven that the Debtor, Defendant Vance Shaf, knew that time was of the essence to the Plaintiff, Dr. Duncan Dinkha, at a time when Shaf had waited for many years to develop the real estate in issue.

Count II of the complaint alleges that the Defendant violated 11 U.S.C. § 523(a)(4) which excepts from discharge debts for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny. The Plaintiff cannot prevail on this count. He has not shown that Shaf was his fiduciary or that he misappropriated funds. Judgment will be entered in favor of the Defendant, Vance Shaf, on Count II.

Count III of the complaint alleges that the Defendant violated 11 U.S.C. § 523(a)(6) which excepts from discharge debts for wilful and malicious injury by the debtor to another entity or to the property of another entity. The Plaintiff alleges that the Defendant's intent was to cause malicious injury to the Plaintiff by conversion of all of his deposited money. The Plaintiff cannot prevail on this count. The transfers of funds to Shaf were not restricted to certain uses, and were made voluntarily, negating the Plaintiff's assertion that possession of them was obtained wilfully and with a present intent to damage his property. Judgment will be entered in favor of Defendant, Vance Shaf, on Count III.

A separate Judgment Order will be entered

Dated: January 17, 2012                    ENTERED: *Jacqueline P. Cox*
                                           _____
                                           **Jacqueline P. Cox**
                                           **United States Bankruptcy Judge**